May it please the Court, my name is James P. Kemp and I represent Mr. Stephen O'Brien, the Plaintiff Appellant in this appeal. Can you move the mic down just a little? A little closer to you. That's good. Thank you. There we are. I'd like to reserve three minutes of my time for rebuttal. We're here on appeal from the District Court's granting summary judgment against Mr. O'Brien, where the District Court failed to follow the summary judgment standard under Rule 56 in the case law that's interpreted. Specifically, it did not view the facts and the evidence in the light most favorable to Mr. O'Brien, did not draw all of the reasonable inferences in his favor, credited testimony of the employer's witnesses over Mr. O'Brien's testimony and those of his witnesses, and ignored legal standards and failed to properly give preclusive effect to an appeals officer decision under Nevada law. The administrative law judge in a workers' compensation matter, their decision is given res judicata preclusive effect for issue preclusion purposes, and the facts that were found by the appeals officer in the case. All right. Well, tell me, how would that the – I mean, the appeals officer, they terminated his disability, right? And so he went and he appealed that, and now he got back the disability in the meantime. But there's a standard of what is it? It's got to be gross or? So there is a standard under NRS 616C.232 that temporary total disability benefits can only be terminated for gross misconduct, if the person's fired for gross misconduct. All right. Well, let's say if I look at this factual situation and the – and we're – I'm speaking hypothetically here. I'm not speaking for anyone, or I'm just speaking – let's say I think there's a triable issue of whether he could have been driving at that particular time. How did that hearing decide that issue? Well, because the issue was that they had fired him because of this alcohol testing that came in below .08 under Nevada law. So the question was then, if he's under the limit, is he deemed to be intoxicated or impaired? And factually, the appeals officer said that he wasn't, and it also didn't matter. Well, that's not what it – it just says under that it wasn't gross negligence, right? Well, gross misconduct. Gross misconduct. Right. And gross – So the appeals officer, he could be – he was – you know, he could be called to duty to drive at that time. How do I figure that one out? Well, so the appeals officer said that he was not scheduled to do any safety-sensitive tasks that day. He was on light duty. So he was not doing his truck-driving duties. He had been put into a light-duty position in a completely different role. All he was doing was making phone calls, answering phone calls, reviewing paperwork, stapling paperwork together. And that was done – Not completely. He was out cleaning up garages and doing other physically stressful work, according to the brief. That is in dispute. Mr. O'Brien testified that all he was doing, all he had ever done was, in the light-duty role, was to do the stapling, to call customers on the phone, and basically work in the office. And at one point he asked that he be able to stand up rather than sit down. Other than that, all he was driving was a desk. He – so that is a factual dispute, Judge Wallace. He disclaims the fact that he was out doing any of those types of duties in a warehouse environment. He was only working in the office. So to the extent that there are – He disputes that he did any driving, even the box truck. Now, that was at a completely different time. That was prior to the point where he was prescribed the narcotic medication. And he did drive the box truck one time to the Henderson store and back. It's approximately 30 minutes each way. And it hurt his back so much, he actually spoke to Ms. Sandoval, who is an HR person, and said, I can't do this. This is killing my back. And then the doctor eventually said he can only sit as tolerated. And so from that point on, he did not do any driving. He drove that box truck one time. It was before he was prescribed medications that made him medically unqualified to drive. And it was done before the doctor said he can only sit as long as he can tolerate, which driving the truck was very painful to him. He wasn't tolerating it. Your position is there was a disputed fact that prevented summary judgment? Exactly, Your Honor. There are many disputed facts that precluded summary judgment. The one you're focusing on now was what was his job in this interim period. And if I understand your argument, you're arguing that that is a disputed fact as to what his job entailed. Only to the extent that R.C. Willey is really disputing it. I mean, the light-duty job offer that he was provided, which is in the excerpts of Record Volume 2 at pages 181 to 182, it says absolutely nothing of driving. It's only talking about doing these clerical types of tasks. It only paid him $11 per hour. His normal rate of pay was $58,000 a year. So they're paying him less than half of what his ordinary rate would be. And under the workers' comp statutes, actually, NRS 616C.475, subsection 8, if he is working in the same classification at light duty, they have to pay him the same rate of pay, which is clear that he was not working in the same classification. Well, you're bringing up all that. They're bringing up all this. So why is it, if it's a disputed issue about whether he could drive at that time, whether he was ready to drive, all right, let's just assume that there is. I'm trying to figure this out in terms of what this would look like as a trial. It would seem to me if the whole case depends on whether he was suitable to drive at that time. Let's say a jury found that he was. If he was, then he clearly falls under the DOT, then the test is clearly admissible, and he's doomed. Okay? Over. If he wasn't, then there would be an argument at that point that they couldn't have given him the test, because the test only applies to people that are ready to drive. Right? And then would there be, then you would try to have that suppressed, and then it would go to pretext. So if you have this one, how do you retry this case? If there's one disputed, let's say there's, if everything hinges on whether he could drive at that time, then how do you retry that case? It doesn't, it seems to me that either of you, once that issue is resolved, one or the other of you wins. And that's why we had moved for partial summary judgment on the issue of liability under the statute. But that's why you would lose on it, because I'm saying it's a triable issue there. Well, and then. Okay. And if I said, and then if they said the same thing, I'm saying that's why you would lose on that. It would seem that once that issue is resolved, then one or the other of you loses. But how do you try that case? You know, what do you, what do we, you know? Well, and I think that's where the issue preclusion comes in. I mean, because it seems to me after that, the jury doesn't need to decide anything. One or the other of you loses. But you're both bringing up stuff on that issue. Well, if we prevail, there would be an issue as to remedies, damages, and so forth. There's that point. But in terms of the evidence that would, you know, have to be considered, I mean, they're saying that he was able to drive, and we're saying that he's not. And when you look at the light-duty job offer, the timesheets that only show that he was doing customer service work, the fact that there are no driver's logs showing that he did any driving. You know, this is a commercial truck driver. Where are the logs showing that he did any of this driving? Well, he drug the boxcar. The box truck one time, that's true. Yeah, well, I mean, that's not. And that's not. Both of you. But then I'm seeing, like, they're saying one thing, you're saying the other thing. But you both want to win. But isn't that — wouldn't I be resolving that factual dispute? Well, and it's a factual dispute that needs to be resolved at trial. Well, then you don't get summary judgment on that. Well, no, and I understand your point. I think that summary judgment on liability would have been appropriate under that. But I can understand what you're saying. There is — there are these factual disputes. And that's why summary — Well, I haven't entirely lost my mind looking at the record. No, no, no. Not at all, Judge Kagan. Not at all. Okay. Is it your position that you win outright on the preclusion argument? On liability for NRS 613.333, that has been our position, still is our position, that all of the facts that are necessary to find liability under that statute were decided and found by the appeals officer in the administrative proceeding. But is that the one of drinking off — that you can't punish someone for drinking off duty? That's the statute that says that you cannot be discriminated against or terminated for doing — using a legal product in the State of Nevada. Well, let me play the devil's advocate there. That one there, I think that the facts are undisputed, that he gets fired after he takes this test, and that it's — it's not because he drank. It's because he drank and then showed up under the influence at work. They fire him after they find out that he's under the influence. So I don't see, you know, to me on that statute, I don't see how he has a cause of action there. Well, for two reasons, Your Honor. First of all, they should not have tested him under the regulations. A driver shall only be tested for alcohol while they are performing safety-sensitive functions. The appeals officer said he was not finding — or made a finding that he was not performing those functions. And if you even go through the regulations that define that, he wasn't doing any safety-sensitive functions. He wasn't driving, he wasn't — The argument is he was subject to doing those. He could have been called to do those safety-sensitive functions. And if that's the case, he does test. Well, that's the argument. But in fact, he wasn't. No, no, no. The legal point is if he's on call for safety-sensitive, he must test. Right. But he wasn't. He was doing — he had been relieved of those duties. And that's one thing that's in the regulations. If you've been relieved of those duties, which you had been because he'd been put in the light duties. But they still have a policy in the handbook that people at work, and it could be doing the other things, not just drivers, cannot be above a certain BA level. And that doesn't necessarily say you're being punished because you drink at home. What you're being punished for is you drank at home too close to when you came to work. And you can't — you know, and there's — there's, I mean, certainly a reason that, as far as I can tell, let's say you're doing bookkeeping, you know. Am I at the top of — would I be at the top of my game right now if I were a .06? Probably. I don't think you'd probably like that too much. I think it's — I think it's an individualized assessment also. I think that there's an affirmative defense to say whether or not he is a safety risk to other people, whether or not there is a problem with his job performance. Well, but I mean — There's no evidence of that. — if you could show that people are more likely to be combative and use profanity, and it affects their filters. So they say things to other employees that they wouldn't normally say. Like, for example, say they might not usually say, hey, you look really fat in that outfit, but then because they've been drinking, they said, you know, they say, well, you look really fat in that outfit, and then it subjects the employer to hostile work environment. And when you look at the legislative history behind the statute, it is exactly these types of assumptions that were designed to be avoided. The statute doesn't provide any kind of — the language in the statute doesn't provide any kind of exception like that. But I mean, what you're talking about, it seems to me, is because maybe I'm a nondrinker that I can't — and I hear that you had wine with dinner last night, that I could then fire you because I'm part of the temperance league and I don't really want you drinking at all. That's what — but when people are talking about I don't want you having a blood alcohol level when you're at work because that creates other problems at work, that doesn't necessarily punish someone for activity. But there's no evidence that he had any poor performance problems. There is no evidence that he presented a safety hazard. They're making an assumption. And the statute was designed to prevent that kind of assumption from being made. It says if you're using this in your off hours and off premises, and — Do you want to save any time for rebuttal? You're down to 136. I do, Your Honor. Okay. Thanks. Before we start the clock, will you be using all the time? I will be using all the time, Your Honor. Okay. Thank you. Thank you. Your Honors, and may it please the Court, my name is David Castleberry, and I represent R.C. Willey in this case. Now, this is a simple case, and it was decided on six undisputed facts. You're going to be pushing a rock uphill with me on that one. Well, let's go through it, Your Honor. Well, first of all, there are three undisputed facts that show that it was proper for Mr. O'Brien to be terminated. There are also three undisputed facts that serve as a bulwark against O'Brien's attempt to create some type of factual issue in this case. So maybe I'll turn to the three facts, the undisputed facts that are a bulwark against the fact issue of whether he was able to drive or not. Well, but, okay, but there's in the record that you know that he's under doctor's care. You know that he has prescriptions for medication. There seems to be some evidence in the record, which you may or may not dispute, that he says he drank at night so he could sleep, but that he was taking pills during the day. You know, and I'm thinking to myself, okay, so you know a guy's got an injury, you know that he's got prescriptions, even though you say, well, we thought he wasn't taking them. If you put that guy behind the wheel and he had an accident, you think you'd be winning on summary judgment for putting that driver behind the wheel? And we absolutely would not want to do that. The issue is cleaner, though, because it's under the DOT testing regulations. The question is whether he was in the pool of available drivers. Now, it's undisputed he has a CDL, a commercial driver's license. Right. It's undisputed that he is subject to random drug and alcohol tests as part of his, as part of the DOT regulations. When he's driving. Or available to drive. Or available to drive. So as soon as he walks in the door, even though he's on light duty, he is in the pool of available drivers, and he must be tested. If his name comes up on a random for drug or alcohol, he must be tested. Now, why is he in the pool of available drivers? We have undisputed facts that say why. His driving was never restricted. He had limitations. Are you paying him as a driver, then, when he's on light duty? While he's on light duty, whether we're paying him or not is immaterial because he is in the pool of available drivers. So, say, for example, to take this prescription issue, and in fact this may have happened, they say, Stephen, O'Brien, come drive. We need you to be a third. We need to have you help with a delivery. He says, well, I can't because I'm taking medication right now. I'm taking it right now. They say, fine, we're not going to put you in, but that doesn't take him out of the pool of available drivers. He could drive the next day. He could drive earlier in the day if he wasn't taking the medication. All right, let me say, because one of the things, okay, when you give your explanation for that, he can rebut it by pretext, right? Did he get tested? There's some randomness to the testing. He was, at the time that he was told he would be tested, he hadn't been injured yet, right? The test was chosen before he was injured. That's right. Okay, then he gets injured. He's on light duty. Then there's another process that I'm told that you all draw people on. A third party draws random individuals and they're chosen for the test. So did the draw happen right after he told his supervisor he'd gotten hammered the night before? Well, a third party draws for the test. All right, but did it happen right after he told his supervisor that he got hammered the night before? Well, the supervisor wouldn't know because the supervisor doesn't find out. I'm asking you temporarily. Did it happen right after he told the supervisor that? No. He was chosen on August 2nd for the random alcohol test. All right, but we don't know what day that it's going to happen then, right? We have no idea. It has to be within the quarter. It has to be sometime within the next three months when the drivers are available. He was injured on August 15th. He wasn't tested until September 27th. Okay. Is that the same day that before he was notified he was going to be tested, he told his supervisor that he'd been drinking heavily the night before? There's nothing in the record to suggest that. There's no admissible evidence that was put before the district court. And, in fact, the only ---- Why do I know that then? Why am I just pulling that out of a hat? Well, because ---- It was somewhere in the record. Well, there was the argument made that he had told some of his supervisors at some time that he was drinking at night. But the supervisor has no ---- Was that in his deposition? It was. And was that part of the summary judgment? It was. Okay. So it's in the record. It's in the record. Well, I'm just saying, though, if that ---- So as far as the temporal ---- But, okay. But that's the type of thing that you can argue on pretext. If the supervisor had ---- If there's something in the record that showed the supervisor had some sort of ability to choose who was in the pool. And so here, Your Honor, going back to while he was in the pool of available drivers, his driving was never restricted. All of his supervisors considered him available to drive. All of them considered him available to drive. And he did, in fact, drive while he was on light duty. His light duty offer letter says that he's given certain duties. This ---- where he's working is in a warehouse. There's ---- So how do I look at it if they all considered he was available to drive? He considers he's not available to drive because he's taking medication during the day. I believe he also in his deposition testimony said he wasn't driving to and from work. He had his girlfriend bringing him to and from work. So he wasn't personally driving, right? That's in the record, too. Correct. So why is that not a tribal issue about whether he was available to drive? So the tribal issue isn't whether he was available at one instance to drive. It's whether he was in the pool of available drivers. And his driving was never restricted. So are you in the pool if your supervisors think you are but you think you're not? Absolutely, until a doctor provides the supervisors with a note that says, my driving is restricted, you're in the pool of available drivers, you're subject to the random DOT testing, and you have to be tested. But didn't he tell his employers he was taking painkillers? He said that he was prescribed. That's the only evidence in the record is that he was being prescribed pain medications. And your argument to that, which I think is questionable, is just because someone's prescribed medication, that doesn't mean they're taking it. Well, that's right. And that's what the DOT statute says. You are only unavailable to drive or out of the pool if you're taking the medication, not if you're prescribed the medication. Is there testimony that he said in his deposition that he was taking the medication? In his deposition, he was asked from time to time, can you drive? Sometimes he drove. Sometimes he said, I can't drive because I'm taking medication. And so his supervisor says, fine, you're not going to drive that day. You could drive the next day. And that supervisor's explanation is on page 33 of the record. And so because of that, he was available to drive. All of his supervisor says that he did, in fact, drive. As soon as he walks in the door, even though he's on light duty, he is available to drive. And under the DOT regs, he's performing safety sensitive functions. All right, let's say if we hypothetically were to say that's a triable issue and that triable issue were determined by a jury that he was not available to drive, what then happens to the test? The test comes in. And why? It comes in as an admission. Because the regulation says you can only test people that are available to drive. It's a random test. It was properly administered. Well, but I'm saying if it's a triable issue and a jury determined that he was not available to drive, the statute only comes into play when you're available to drive, right? Correct, the DOT statute. So if you lost that issue, then how could the test be admissible? Well, Mr. O'Brien himself has said, and he argues that this is an admitted fact, he was terminated due to the results of a breathalyzer test. Well, that's why he arguably would lose on whether he was terminated for activity in his private time. That's — but that doesn't — there's other charges here. There's the public policy wrongful discharge claim. Yes. There's the ADA claim. He must prove as a prima facie evidence that his workers' comp claim or his disability are causally connected to his termination. The third fact of his motion for partial summary judgment says, I was terminated due to the results of a breathalyzer test. R.C. Willey's response, admitted. Because that was the reason for his termination, he was not terminated because of a disability. He was not terminated because of a workers' comp claim. He was not terminated because of off-duty work. He was terminated because of his on-premises impairment. And R.C. Willey, taking driving out of the equation, it has a policy, and it's a reasonable policy. That's admitted on page 38 of Mr. O'Brien's brief. R.C. Willey can have this policy because it is calculated to protect the safety. Okay, but if you couldn't have tested him, because that test he has to be available to drive, if you couldn't have tested him, what evidence do you have left of his being at a certain level at work? Well, if we're talking about a disability, Your Honor, it's never been argued that the test does not come in if he's not available due to safety-sensitive condition. Well, that would be a trial issue. That would be a trial issue. That's not a summary judgment issue. That's a trial issue. That's what I'm trying to say. What would this trial look like? Because I was a trial judge, I was a trial lawyer, and I'm trying to think if it went back on a triable issue, what would the trial look like? The trial would be, did he — the question was, was he terminated because of a disability? Was he terminated because he filed a workers' comp claim? Was he terminated because of off-duty lawful conduct? And the test comes in, it's admissible, and the question is, did R.C. Willey at any time think that there was anything unlawful about administering this test? That would go to pretext. There is nothing in the record to even suggest that R.C. Willey thought its policies and procedures weren't followed exactly as it had to. And, in fact, expert testimony that was submitted down below said that Mr. O'Brien's test was proper because he was in the pool of available drivers. And there's no question of fact on that because he had no medical restriction on driving, he was considered to be in the pool of available drivers, and he did, in fact, drive. And under those three undisputed facts, it's a bulwark. We don't need to get to all of the other issues that have been raised because he was in the pool of available drivers. And he blew a .067. It's reasonable to set a limit for all employees at a .04. The DOT regs say that your cognitive, your decision-making, your reaction time are all impaired substantially to affect safety at .04. And so the test is admissible under any circumstance, and the termination was lawful. So when you, it's just, it's hard for me to, like I said, hypothetically, if you had considered him in the pool of available drivers and you hadn't tested him, you sent him out to drive and he had an accident, I think you would be very hard-pressed to not be liable for putting, you know, and I'm seeing all that exact same evidence coming in, what were you thinking that he was in the pool of available drivers when you knew that he had prescribed medication? Well, a lot of DOT drivers have prescribed medication and you can receive a certification from a doctor that says that you still can drive with these prescriptions. But do you have a certification from a driver that he can drive with that? You're just saying the absence of it means that he can. And the driver has an obligation under DOT statutes. And so the fact that you don't have that would then, it would have been perfectly fine that you send someone out under, with medication and... If, it would be perfectly fine under DOT regulations because he has an obligation to say, I can't drive at this time because of my prescriptions. Fine, we're not going to let, we're not going to make you drive. You're still in the pool of available drivers. And so if we ask you tomorrow, you're not taking your prescriptions, you could drive. Under DOT regs, he is required to be tested. And so we shouldn't say, oh, we're just going to send people out even if they say we can't drive. No. The DOT says every CDL holder has an obligation to say when they can and cannot drive. Take the DOT regulations out of the equation. There'd be nothing illegal about him showing up at .067. There's nothing illegal. It would violate R.C. Willey's policy, which it's admitted is a reasonable policy and R.C. Willey may have. And implement with respect to its employees. In the absence of any evidence that he was, in fact, impaired at that level for the activities he was, in fact, engaging in. That's correct. That's the purpose of a policy. I can't tell when someone's impaired or not. The breathalyzer can say .04 or higher. Your cognitive abilities, your decision-making reaction is affected. And so you don't need to engage in an individualized inquiry. All employers have these policies. Well, your handbook, though, what's the level on your handbook? .04. Okay. But you only know that he's above a .04 because you gave him the DOT test. And as far as R.C. Willey knows and the evidence in the record, it was entirely proper. Didn't his supervisor say he couldn't tell anything at that point? Isn't their testimony the fact? Yeah. And so that goes to the pretext argument, oh, we're going to catch him when he's drunk. Well, they had no idea that he was drunk. They had no idea that he was impaired at all. But he was impaired. The termination was proper. All right. You're out of time. Thank you, Your Honor. Thank you for your argument. Just a minute. Just a minute. I had a question I wanted to ask. Go ahead. Yeah, you're still there. I'm sorry, Judge Wallace. I understand your argument on Claim 1, the ADA, and your argument on Claim 2, the retaliatory. But I'm having difficulty with Claim 3 on this statute. And the difficulty I have is I don't quite understand your argument that there's not a disputed fact as to what his job was. He says his job was to be temporary, to be shifting papers, that he didn't go out in the garage and do the work out there. He did drive the one-box car. You say, no, it was much broader than that. But why is that not a disputed fact that had to go to the district court as to what his job was under the circumstance that you have here today? The reason is because what his job was does not matter. Every employee at R.C. Willey cannot come to work at a .04 blood alcohol content or higher. It's undisputed the policy is reasonable. It's undisputed he violated the policy. And because of that, his termination is lawful because under NRS 613, you cannot hold someone's drinking against them unless they come on the premises impaired. And if there is a policy that is generally applicable, then it should. And the purpose of that policy is to protect the safety of the employees. R.C. Willey can, one, have that policy and, two, enforce that policy by termination. So it really doesn't matter whether he drove a box car or whether or not he was available. If it was a secretary or anyone else that came on board, they would be violating a company policy, and that's your argument? That's correct, Your Honor. Okay. I understand your argument. Thank you. Thank you, Your Honor. Your Honors, the policy of R.C. Willey cannot trump the statute, and that's essentially what's being argued here. They're presuming that he's impaired. But all of the statutes in Nevada, the drunk driving statute and also the workers' comp statute, which incorporates the .08 standard, says that unless you're above .08, you can't presume that someone is impaired. You have to go on a case-by-case basis to look at it. No, but he has, to me, it seems to me that if that test comes in, then he knows what the handbook says and that he's out of luck. If the test doesn't come in, then they don't have any evidence of his blood alcohol level, and then there really isn't evidence in the record of anything. And I agree with you on that. But I don't know, as a practical matter, if they seem to argue that, but it all seems to boil down to the colonel, was he available to drive? If he was available to drive, if that's not a trial, if he was available to drive, DOT can test him. Then it comes in, and then he's in violation of both his handbook and he, you know, he flunked the test and all of, and he pretty much acknowledges he flunked the test is why he got fired, and it all falls into place. But if he wasn't available to drive, then the statute seems to say you can't test him, and then you go to they did test him, and whether testing him, if he can argue pretext or anything else. It all seems to come back to that colonel. And he wasn't available to drive. He was medically unqualified. Oh, I know. You say he wasn't available to drive. They say he was available to drive, and you both want us to resolve, and you think that you win right here. 49 CFR section 391.4112 says that if he's prescribed the narcotic medication and taking it, he cannot drive. He's medically unqualified unless a doctor says, yeah, under your circumstances you're okay. And there was no report like that from a doctor. He was never asked to provide any reports from doctors either as to whether or not he could drive. The closest we have in terms of that is that he was under the narcotic medication that made him medically unqualified. When he's medically unqualified, his supervisor should know you're on light duty. You're not qualified to drive. You don't get tested today, because that's what the other regulation says. That's 49 CFR 382.305 subsection M. That's what that says, is that you are not, you shall not be tested as a driver if you are not scheduled to do these safety-sensitive functions. And the appeals officer found, and this is issue preclusion res judicata, appeals officers found he was not doing safety-sensitive functions. He was not scheduled to do that that day. He was not doing it. He was working his light-duty job. Well, didn't the appeals person find that he did not, he was, that it was not gross misconduct, so he gets his benefits? That's a legal part of the decision, but the factual findings of the decision are also preclusive, because it all had to do with why he got fired, what were the facts and circumstances.  They had the chance to litigate. Unless any of us, we've gone over this. So does anyone have any additional questions? Judge Wallace, anything more? I'm fine, thanks. Okay. I think we're done. Thank you both for your argument in this matter. It will stand submitted. We appreciate it.
judges: Wallace, Callahan, Selna